UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-479-GWU

MITCHELL NAPIER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-479 Napier

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

06-479 Napier

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mitchell Napier, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of hearing loss, hypertension, coal workers' pneumoconiosis, chronic obstructive airways disease, a mild obstructive ventilatory defect, a history of alcoholism, and a mild cerebellar degenerative disorder with abnormal gait. (Tr. 18). Nevertheless, based in part on testimony from a Vocational Expert (VE), the ALJ determined that Mr. Napier retained the residual functional capacity to perform a significant number of sedentary level jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether Mr. Napier, a 43 year-old man with an eighth grade education and work experience as a mining machine tender (Tr. 255-7) could perform any jobs if he were limited to sedentary level exertion and also had the following non-exertional impairments. (Tr. 273-5).

06-479 Napier

He: (1) could do no stooping or crawling; (2) could occasionally balance, kneel, and crouch; (3) needed to avoid exposure to hazardous machinery and vibration; and (4) needed to have a job that would accommodate his functional illiteracy. (Tr. 273-5). The VE responded that there were sedentary level jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.[1]

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

The hypothetical question does not include any restriction on working in dusty conditions, although, as previously noted, the ALJ found that Mr. Napier's pneumoconiosis, chronic obstructive airways disease and mild obstructive ventilatory defect were all "severe" impairments. By definition, a "severe" impairment imposes a significant work-related limitation of function. 20 C.F.R. Sections 404.1520(c); 1521(a). Mr. Napier, who worked as an underground coal miner for approximately 22 years (Tr. 265), and who never smoked (Tr. 118, 131), underwent a pulmonary examination by Dr. Glen Baker on June 5, 2003. Dr. Baker's examination showed

---

[1] The VE gave numbers concerning two jobs, both of which reportedly had 250 positions in the state of Kentucky; however, one of the jobs was said to have 450,000 positions nationally and the other only 35,000, which would appear to be inconsistent, unless a typographical error was made in transcribing the hearing tape. (Tr. 276).

8

06-479 Napier

diminished breath sounds bilaterally and he reviewed a report of an x-ray showing coal workers' pneumoconiosis, Category 2/2. (Tr. 119). Pulmonary function testing showed a mild obstructive defect with no significant improvement on bronchodilators. (Id.). Dr. Baker concluded that Mr. Napier was "100 percent occupationally disabled for further work in any kind of dusty environment that would be calculated to worsen his condition." (Id.).

The plaintiff did not undergo any other specific testing for breathing, although Dr. Kevin J. Croce, a consultative physical examiner, did note diminished breath sounds. (Tr. 239). Essentially, Dr. Baker's conclusion is uncontradicted. The ALJ did not accept Dr. Baker's conclusion only on the grounds that the plaintiff had not received any treatment for pulmonary complaints. (Tr. 20). While failure to seek treatment may be a ground for discounting the credibility of a patient's complaints of disabling pain, see Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990), it is not clear that any specific treatment was necessary, other than a need to avoid dusty conditions. Under the circumstances, a specific functional restriction given by a specialist is entitled to greater weight. Moreover, the error cannot be considered harmless since Social Security Ruling (SSR) 96-9p provides that restrictions to avoid exposure to odors or dust must be evaluated on an individual basis. SSR 96-9p, p. 9.

The plaintiff has raised several other issues on appeal.  He notes that no specific hearing restriction was imposed in the hypothetical question, despite specific testing by a specialist showing hearing loss (Tr. 170-1), and a notation by one physical examiner that Mr. Napier appeared to have difficulty understanding a normal, audible tone.  (Tr. 131).  Other examiners did not note difficulty understanding normal speech.  (Tr. 137, 241).  Regardless of what weight should have been given to these examining sources, the VE testified that the plaintiff's description of hearing problems would not affect the jobs she had listed.  (Tr. 276).  Another objection made by the plaintiff is that the ALJ did not give a sufficient rationale under the procedures listed at 20 C.F.R. Section 404.1527 for rejecting the opinion of Dr. Croce.  The ALJ stated that Dr. Croce's opinion was rejected because it was not consistent with other one-time examiners, Dr. Monte Edward Martin and Dr. Bobby J. Kidd.  (Tr. 20).  The plaintiff maintains that there is no real inconsistency between the three reports.  Once again, however, even if Dr. Croce's report was given controlling weight, it does not appear that the restrictions would have resulted in a finding of disability, since Dr. Croce felt that Mr. Napier could perform "medium" level exertion and the ALJ imposed generally more significant restrictions.  (Tr. 245).  Finally, noting that the VE had testified that there would not be sedentary jobs available for Mr. Napier if he could not perform more than occasional gross manipulation with his right hand (Tr. 273-4), the plaintiff says that

06-479 Napier

no sufficient rationale was given for the rejection of Dr. Martin's limitation in this area. However, neither Dr. Kidd or Dr. Croce found any objective limitations in the manipulation, and they could reasonably have been given as much weight as Dr. Martin, since all of these sources were one-time examiners.[2]

The decision will be remanded for further consideration.

This the 15th day of August, 2007.



Signed By:

G. Wix Unthank

United States Senior Judge

---

[2] Both Dr. Kidd and Dr. Croce found that the plaintiff had a positive Romberg test, which indicates poor balance (Tr. 139, 241). Dr. Kidd thought that the plaintiff had "probable cerebellar degenerative disorder." (Tr. 139). Dr. Martin, who had examined the plaintiff earlier, noted knee pain and limping (Tr. 132), and a treating psychiatrist noted difficulty balancing because of degenerative joint disease of the knees. (Tr. 221). Dr. Croce also observed the plaintiff using a cane and reported he had balance problems which had become progressively worse over the previous two years. (Tr. 238-9). However, in terms of specific functional restrictions, no examiner restricted Mr. Napier to a greater degree than the "occasional" balancing found by the ALJ.